Martie J. CHOATE, Plaintiff–Appellant,

v.

Robin Dale NATVIG, and Tonya Welker,
Defendants–Respondents.

No. 21348.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 19, 1997.

Motion for Rehearing or Transfer
Denied Sept. 9, 1997.

John P. Heisserer, Cape Girardeau, for Plaintiff–Appellant.

Albert C. Lowes, Cape Girardeau, for Defendants–Respondents Welker.

Before PARRISH, P.J., and MONTGOMERY, C.J., and BARNEY, J.

PER CURIAM.

Martie J. Choate (Plaintiff) appeals from a judgment in an action for personal injuries she suffered in an automobile collision between a 1983 Chevrolet C–10 Van, in which she was a passenger, and a 1994 Chevrolet automobile being operated by Tonya Welker (Defendant Welker). The van was being driven by Robin Dale Natvig (Defendant Natvig). Judgment was entered following a jury trial and in its verdict, the jury found Plaintiff's total damages to be $860,000.00. The jury assessed no percentage of fault against Defendant Welker, but assessed 20 percent of the fault against the Plaintiff and 80 percent of the fault against Defendant Natvig. The trial court, *inter alia*, entered judgment in favor of Plaintiff and against Defendant Natvig in the amount of $663,-000.00. We affirm.

## I.

Viewed in the light most favorable to the verdict, *Rains v. Herrell*, 950 S.W.2d 585, 589 (Mo.App.1997), the evidence shows that on April 21, 1995, Defendant Natvig was operating his van in Scott County, Missouri, with Plaintiff riding as a passenger in the front passenger's seat. While traveling east on Route E, near Commerce, Missouri, Plaintiff and Defendant Natvig spied a turtle on the roadway. Plaintiff asked Defendant Natvig to stop his van and retrieve the turtle. The turtle was retrieved.

After again commencing east along Route E, Plaintiff appeared to be afraid of the turtle because it was not remaining on the dashboard of the van where it had been placed. After the turtle tumbled to the floor from the dashboard, Plaintiff asked Defendant Natvig to pick it up and remove it from the area where she was sitting. Defendant Natvig, while driving the van, made approxi-mately three unsuccessful attempts to pick up the turtle. Immediately following his third attempt, Defendant Natvig looked up and later testified that "all I seen was white. I didn't see no road."

The "white" that Defendant Natvig was referring to was the color of Defendant Welker's oncoming vehicle. During Defendant Natvig's last attempt to pick up the turtle, his van crossed the center line of Route E, venturing into its westbound lane, causing a collision with Defendant Welker's westbound vehicle.

Plaintiff charges the trial court with three points of error: (1) in excluding evidence that Defendant Welker had used illegal drugs prior to the accident, as revealed by tests performed after the accident, by (a) prohibiting Plaintiff's use of the deposition testimony of Defendant Welker, wherein she had invoked the Fifth Amendment to avoid answering questions regarding Defendant Welker's drug use, for purposes of showing an inference of drug ingestion; and (b) impermissibly tying the introduction of such evidence relating to drug usage by Defendant Welker to the introduction of irrelevant evidence of drug usage by Plaintiff; (2) in submitting a jury instruction to the jury allowing it to assess a percentage of fault to Plaintiff; and (3) in failing to strike extraneous and irrelevant inquiries and comments made by Defendant Welker's counsel during Defendant Natvig's cross-examination, because such inquiries and comments were unfairly prejudicial to Plaintiff.

## II.

In review of Plaintiff's point one, she argues that the trial court abused its discretion in sustaining Defendant Welker's motion in limine excluding Defendant Welker's deposition testimony regarding Defendant Welker's use of marijuana and her invocation of her Fifth Amendment right against self-incrimination. Plaintiff also maintains that the court abused its discretion when it sustained Defendant Welker's motion in limine excluding evidence that Defendant Welker had tested positive for the use of marijuana following the accident. She argues that the trial

court's tying together the admission of evidence of Defendant Welker's use of marijuana to the admission of evidence of purported drug use by Plaintiff was an abuse of discretion.[1]

Initially, we note that "[g]ranting a motion in limine does not automatically result in permanent exclusion of the disputed evidence." *Woodiel v. Barclay Enterprises, Inc.,* 858 S.W.2d 247, 250 (Mo.App.1993)(citing *State v. Evans,* 639 S.W.2d 820, 822 (Mo.1982)). "Such a ruling is interlocutory only, and additional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence." *Woodiel,* 858 S.W.2d at 250.

Generally, appellate courts will not review a claim that evidence was erroneously excluded unless the party seeking to present it makes a specific and definite offer of proof. *Id.; see also Frank v. Environmental Sanitation Mgmt., Inc.,* 687 S.W.2d 876, 883 (Mo. banc 1985).

Plaintiff's attempts, both during pretrial and at trial, to make an offer of proof of the deposition testimony relating to Defendant Welker's drug use cannot be reviewed by this appellate court. This is because the deposition testimony that Plaintiff proffered did not appear in the official record or in the legal file. "Documents, depositions, etc., which are only attached to a party's brief and not contained in the legal file, are not part of the record and will not be considered on appeal." *Strycharz v. Barlow,* 904 S.W.2d 419, 426 (Mo.App.1995). Without such deposition testimony before us, we do not consider Plaintiff's subpoint regarding Plaintiff's use of deposition testimony of Defendant Welker. *See Nolfo v. Dubin,* 861 S.W.2d 136, 138 (Mo.App.1993).

In considering Plaintiff's additional subpoint, we also note that outside of Plaintiff's reference to Defendant Welker's deposition testimony, *supra,* Plaintiff did not make an offer of proof relating to the introduction of any drug tests that may have been performed on Defendant Welker after the accident. An offer of proof is generally required in order to preserve a claim of erroneous exclusion of evidence. *See Woodiel,* 858 S.W.2d at 250. Indeed, the record is devoid of any offer of proof by Plaintiff, either at pretrial or during the trial, relating to any laboratory or medical report regarding Defendant Welker's "drug screen" made at the emergency room after the accident in question. This report would have constituted material and relevant evidence because "[p]roof of impaired driving due to drugs is not as easily proven as impaired driving due to alcohol...." *State v. Friend,* 943 S.W.2d 800, 802 (Mo.App.1997). While Defendant Welker's attorney stated at pretrial that there "was some evidence of positive marijuana on a drug screen on Defendant Welker's part," this statement did not show the quantity of marijuana ingestion. It was no substitute for the actual blood examination report, accurately revealing the quantity and/or degree of marijuana ingestion by Defendant Welker. *See id.* Nor, did Plaintiff present, by way of an offer of proof, any expert testimony at trial that showed how Defendant Welker's driving abilities were impaired by the ingestion of marijuana. "It is the appellant's responsibility to supply this court with a full and complete record on appeal that we may reach a conclusion on the claims before us with some degree of confidence that our decision is reasonable, fair and accurate." *C–4 Corp. v. E.G. Smith Const. Prod.,* 894 S.W.2d 242, 244 (Mo.App. 1995).

Although an offer of proof assists the trial court and opposing counsel to understand the proposed evidence, "an offer of proof enables appellate courts to understand claims of error." *Frank,* 687 S.W.2d at 883. It was Plaintiff's "duty to submit a proper record containing all of the evidence necessary for a determination of the questions presented to the appellate court for decision." *Nolfo,* 861 S.W.2d at 138. In the absence of a complete record relating to Defendant Welker's blood examination report, together with any other probative evidence relative to Defendant Welker's use of drugs, we are unable to review Plaintiff's subpoint. Point One is denied.

---

1. The trial court stated: "You open it up on one, you open it up on all of them."

## III.

In Plaintiff's second point of error, she charges the trial court with error in allowing the jury to assess a percentage of fault to her because there was no evidence to support a comparative fault jury instruction with regard to her fault.

An instruction must be supported by substantial evidence which, if true, is probative and from which the jury can reasonably decide the case. *Seidel v. Gordon A. Gundaker Real Estate Co., Inc.*, 904 S.W.2d 357, 363 (Mo.App.1995). In reviewing an instruction, we view the evidence and inferences in a light most favorable to the instruction and disregard contrary evidence. *Id.* To reverse on grounds of instructional error, the party challenging the instruction must show that the offending instruction, misdirected, misled or confused the jury. *Id.*

Generally, the question of an automobile passenger's negligence may properly be submitted to a jury depending on the facts and circumstances of each case. *Boydston v. Burton*, 379 S.W.2d 536, 541 (Mo. 1964). A guest passenger in an automobile is required to exercise ordinary care for his own safety. *Hagedorn v. Adams*, 854 S.W.2d 470, 474 (Mo.App.1993). Additionally, it is the duty of a guest passenger to warn a driver of imminent danger, and, when a driver has been or is exercising a visible lack of caution, to take such action as an ordinary or reasonably prudent person would take under the same or similar circumstances which could include, among other things, a lookout for dangerous situations. *Lamfers v. Licklider*, 332 S.W.2d 882, 889 (Mo.1960).

Interference with the driver of an automobile by a passenger while on a highway is apt to contribute to, rather than decrease, the danger of an accident. 7A AM. JUR.2D *AUTOMOBILES & HIGHWAY TRAFFIC* § 603 (1980). If the situation is such as to indicate to a reasonably intelligent person that interference is likely to increase rather than lessen the danger of an accident, then the passenger is under a duty to not interfere lest he or she may be guilty of negli-

gence. *Id.; see also Escamilla v. Garcia*, 653 S.W.2d 58, 61–62 (Tex.App. 4 Dist.1983).

Here, Plaintiff testified that she asked Defendant Natvig to stop the van so she could pick up a turtle she spotted on the roadway. She further testified that as they were driving, the turtle "popped out of his shell ... [and was] trying to walk." Plaintiff testified that she was afraid that the turtle would fall onto her food, so she reached towards the back of the van to put it in a box, and as she turned back around, the collision occurred.

On the other hand, Defendant Natvig, the driver of the van, testified that as he and Plaintiff were traveling east on Route E, Plaintiff saw a turtle on the road and asked "can we get it." He testified that he then stopped the van, exited the van, and retrieved the turtle himself. Defendant Natvig testified that he placed the turtle on the dashboard of the van. He stated that after a couple of miles, the turtle "started to crawl and then it crawled off the dash and fell onto the dog house [center console] and just kept right on rolling into the floor."

After the turtle completed its journey from the dashboard to the floor of the van, Defendant Natvig testified that Plaintiff had "like a scared expression" and then she indicated to him to "get it." He stated that Plaintiff was then "facing sideways with her back to the door of the van, and when the turtle came by, she had her feet in the chair and her back to the windshield." He testified that he made several attempts to grab the turtle but was unsuccessful. He testified that the reason he tried to grab the turtle so many times was because of Plaintiff's repeated requests and because she appeared to be afraid. Defendant Natvig also testified that after the third unsuccessful attempt, "I looked up [and] all I seen was white. I didn't see no road," and the head-on collision occurred.[2]

We note that in Defendant Natvig's testimony he stated that Plaintiff "never laid a finger on that turtle." Defendant Natvig's testimony contradicted Plaintiff's testimony where she indicated that she was the one

2. Defendant Natvig testified on direct examination that during this period of time he was travel-

ing "[b]asically 55 [miles per hour], the speed limit."

who got out of the van, retrieved the turtle and attempted to manage its movement while in the van.

Issues such as credibility of witnesses, the weight of evidence, and the resolution of conflicts in the testimony are not matters which we can review. *Southwestern Bell Yellow Pages, Inc. v. Robbins*, 865 S.W.2d 361, 365 (Mo.App.1993); *Whaley v. LS & E, Inc.*, 859 S.W.2d 180, 181–82 (Mo. App.1993).

The jury in this case could have believed that Plaintiff's conduct just before the accident contributed to its cause. Viewing the evidence in the light most favorable to the jury's findings, as we are required to do, we hold that Defendant Natvig's testimony does constitute probative evidence upon which the jury could base its finding of Plaintiff's comparative fault.

The submission of Defendant Welker's jury instruction regarding Plaintiff's comparative fault was supported by substantial evidence and was therefore properly before the jury. *See Swinger v. Bell*, 373 S.W.2d 30, 33–35 (Mo.1963).[3] Point Two is denied.

### IV.

In Plaintiff's final point of error, she maintains that the trial court erred in allowing and not striking extraneous, irrelevant and prejudicial inquiries and comments made by Defendant Welker's counsel during Defendant Natvig's cross-examination.

Generally, questions regarding the manner and conduct of witness examination and the conduct of counsel are clearly within the trial court's discretion. *Gage v. Morse*, 933 S.W.2d 410, 422 (Mo.App.1996); *City of Kansas City v. Habelitz*, 857 S.W.2d 299, 301 (Mo.App.1993). Indeed, trial courts are allowed wide discretion in ruling on the propriety and prejudicial effect of the conduct, comments, and arguments of counsel, and their rulings thereon will not be disturbed absent an abuse of such discretion. *Id.*

Judicial discretion is the option the trial judge has in doing or not doing a thing which cannot be demanded by a litigant as an absolute right. *Anderson v. Robertson*, 402 S.W.2d 589, 592 (Mo.App.1966). Judicial discretion is abused when the court's judgment is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Hileman v. Hileman*, 909 S.W.2d 675, 679 (Mo. App.1995). Whether counsel's comments or arguments are so prejudicial as to constitute reversible error depends on the nature of the utterances and circumstances under which they are made. *Gage*, 933 S.W.2d at 423.

In the instant case, Plaintiff complains that Defendant Welker's counsel's comments made during Defendant Natvig's cross-examination regarding whether Plaintiff was "hiding out from her husband" and that she had "completely abandoned her children" is reversible error.[4] Immediately after these comments were made, however, the trial court judge directed the jury to not consider the comments because they were "not relevant to the lawsuit."

Defendant Welker's counsel made additional comments and inquiries regarding whether Plaintiff had gone to Defendant Natvig's home sometime after the accident and broken "into his quarters and run off with the goodies ... [t]hat shows she's not hurt."

Plaintiff avers that Defendant Welker's counsel's comments were the reason that the jury assessed 20% of the fault for the accident to Plaintiff. We disagree. Plaintiff has failed to demonstrate how the absence of these comments would have materially affected the merits of the action. Further, the trial court sustained Plaintiff's objections

---

**3.** Plaintiff also complains of trial court error regarding the trial court's refusal to admit the deposition of Defendant Natvig, relating to Plaintiff's conduct preceding the collision. However, Plaintiff raises this allegation of trial court error only in the argument portion of her brief and we, therefore, decline to review this allegation of error. *Meyer v. St. Louis County*, 602 S.W.2d 728, 739 (Mo.App.1980).

**4.** Plaintiff had testified on direct that at the time of the accident she was in "the process of being separated."

throughout regarding Defendant Welker's counsel's improper or irrelevant comments.

Pursuant to Rule 84.13(b)[5], this Court shall not reverse the judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action. *Gage,* 933 S.W.2d at 420.

Further, the placing of irrelevant evidence before a jury is not a ground for reversal unless it prejudices the complaining party or materially affects the result or outcome of the trial. *Id.* at 421. Prejudicial error occurs only when objectionable evidence affects the result or outcome of the trial. *Id.* Plaintiff failed to demonstrate how the outcome would have been different without the complained of comments. We find no abuse of trial court discretion in its handling of the complained of inquiries or comments. Point Three is denied.

Defendant Welker filed a motion to dismiss Plaintiff's appeal for violations of Rule 84.04(d). In turn, Plaintiff has filed her motion seeking sanctions against Defendant Welker for having filed a frivolous motion to dismiss appeal. Both motions are denied.

The judgment is affirmed.

5. All rule references are to Missouri Court Rules (1997), unless otherwise indicated.